UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:

JOSEPH BOCCIA,

        Debtor.

-----------------------------------------------------------------------X
MARC A. PERGAMENT, CHAPTER 7 TRUSTEE
of the ESTATE of JOSEPH BOCCIA,

        Plaintiff,

  -against-

JOSEPH BOCCIA,

        Defendant.

-----------------------------------------------------------------------X

Case No.: 07-75083-478

Chapter 7

Adv. Pro. No.: 08-8155-478

## MEMORANDUM DECISION

*Appearances:*

    Weinberg Gross & Pergament, LLP
    *Attorneys for the Plaintiff*
    By: Marc A. Pergament, Esq.
    400 Garden City Plaza
    Suite 403
    Garden City, NY 11530

    Law Office of Dennis J. O'Sullivan, P.C.
    *Attorneys for the Defendant*
    By: Dennis J O'Sullivan, Esq.
    210-13-35th Avenue
    Bayside, NY 11361

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

The Defendant, Joseph Boccia (the "Defendant" or "Debtor") filed a voluntary Chapter 7 bankruptcy petition on December 9, 2007. Marc Pergament, Esq. was appointed as the Chapter 7 Trustee (the "Trustee" or the "Plaintiff"), and was duly qualified as the permanent Trustee. On July 17, 2008 the Trustee commenced the instant adversary proceeding against the Debtor, which seeks to deny the Debtor a discharge under 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), and 11 U.S.C. § 105. A trial was held on this matter on December 29, 2008, and proposed findings of facts and conclusions of law were filed by both parties on January 26, 2009.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 105, 157, 727 and 1334, and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334. The following constitutes the Court's finding of fact and conclusions of law as mandated by Bankruptcy Rule 7052.

## FACTS

1. The Residence

The Debtor, a high school graduate with some college experience, has been employed as an operating engineer for several years, which requires him to handle and drive heavy equipment. In March 2005 the Debtor married his current wife, Jennifer Coyne Boccia ("Jennifer"). The Debtor, Jennifer and their two children, currently reside at the real property located at 695 Anderson Avenue, Franklin Square, N.Y. (the "Residence"). The Residence was purchased in September 2006, and is jointly owned by both the Debtor's wife and her father.

The Residence was purchased with a $5,000 loan from Michael Tripodi ("Tripodi"), a $20,000 loan from the Debtor's father-in-law, and some money from the Debtor. Neither of the loans are listed on the Debtor's Schedules. Despite the fact that both Debtor's wife and father-in-law are listed on the deed, at the Debtor's 341 Meeting the Debtor falsely testified that his

2

father-in-law was the sole owner of the Residence. The Debtor told the Trustee and the United States Trustee that he and his wife were just renting the property from his wife's father. (Trial Ex. M).[1] According to the Debtor, the amount of "rent" paid by him for the Residence is equal to the amount of the mortgage, taxes and insurance.

Both the Debtor and Jessica testified that they referred to these payments as "rent" because the father-in-law's name was on the deed and they felt that it was really his home because he had provided them with money to purchase it. The Debtor testified that as long as he owed money to his father-in-law for the loan he felt that his father-in-law was the true owner. However, both the Debtor and his wife admitted that despite their "rent" payments, it was the Debtor's wife that took the home mortgage interest tax deduction on her own tax returns, and not her father.

### 2. The Central Boulevard Property

The Debtor entered into a partnership/business venture with two individuals: Tripodi and Salvatore Maffettone ("Maffettone") to purchase the real property located at 2223 Central Boulevard, Merrick, New York (the "Central Boulevard Property").[2] The purpose of the transaction was to build two homes on the land and sell them. Both the Debtor and Tripodi invested $35,000, while Maffettone was to invest roughly $250,000, covering the bulk of the purchase. The Debtor agreed to be the sole borrower in order to obtain financing for the transaction. Tripodi and Maffettone's names were not placed on the deed. The Debtor took all of the deductions for the home on his 2007 tax return.

---

[1] It should be also noted that the Debtor's own counsel also referred to these payments as rental payments in a letter he sent to the Trustee dated June 4, 2008. The letter stated that "[w]ith regard to item *a (rental value of real property known as 695 Anderson Avenue, Franklin Square, New York)*, my client has indicated that he does not have any such document or information. However, in the event, you office requires an opportunity to inspect the interior of the premises in order to properly estimate said rental value, my client would made [sic] an accommodation." (italics in original). (Trial Ex. F).

[2] Debtor's Schedule A lists the Central Boulevard Property as "2322 Central Blvd", but in fact the correct address is 2223 Central Boulevard as noted at both the 341 Meeting and the Trial. (Trial Ex. M; 1/26/09 Tr., p. 23).

However, after the Debtor closed on the Central Boulevard Property, the arrangement between the men fell through due to Maffettone's inability to provide the necessary additional funds, and the burden fell to Tripodi and the Debtor. Tripodi gave the Debtor the required $35,000 and proceeded to give him additional monies each month for roughly ten months in 2006 to help with the costs of the mortgage. After the ten month period Tripodi stopped making the monthly payments to the Debtor because he lacked the necessary funds to continue the partnership, and the partnership crumbled after Maffettone dropped out. Ultimately the Central Boulevard Property went into foreclosure, and was one of the factors that led to the Debtor's decision to file for bankruptcy.[3]

On his Schedules and Statement of Financial Affairs the Debtor failed to disclose the partnership. The partnership was also not disclosed to the Trustee in response to the Trustee's questioning at the 341 Meeting. While the Trustee did not specifically ask at the 341 Meeting if the Debtor was involved in a partnership with anyone for the purchase of the Central Boulevard Property, the following exchange between the Trustee and the Debtor took place:

> Question:   "Have you owned any real estate in the last six years?"
> Answer:     "Yes."
> Question:   "And what real estate is that?"
> Answer:     "23 …."
> Question:   "22?"
> Answer:     "2223 Central Boulevard."
> Question:   "And who owns that property?"
> Answer:     "I do."
> Question:   "You're the sole owner?"
> Answer:     "Yes."

(Trial Ex. M). Despite the fact that three men contributed to purchase the property, the Debtor falsely testified at the 341 Meeting that he had purchased the Central Boulevard Property for

---

[3] On December 9, 2007, the Debtor, represented by counsel, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor also filed the required Schedules and Statement of Financial Affairs with his Petition. Since his initial filing, the Debtor has made no amendments to either his Schedules or his Statement of Financial Affairs.

$600,000 and that he obtained 100% financing to purchase it. In fact the property was purchased for $705,000.00, and he obtained a mortgage for $600,000. The Debtor made a deposit of $105,000 for the property, $70,000 of which was from Maffettone and Tripodi.

3. Debtor's Schedule J

In the "Other" category of Debtor's Schedule J, the Debtor listed the following expenses: (a) care of household or family members in the sum of $200 per month; (b) hair care in the sum of $50 per month; (c) health care in the sum of $100 per month; (d) miscellaneous expenses in the sum of $150 per month; and (e) toiletries health & beauty in the sum of $150 per month. The combined total of these are $650 per month. While the Debtor testified that he had four children, two with his current wife and two from a past marriage, this information was not disclosed anywhere in the Debtor's Schedules, but was discussed at the Debtor's 341 Meeting.

Despite the Trustee's repeated requests for documentation supporting the expenses noted above, the Debtor failed to turn over any such documentation, and asserted that he and his wife did not keep receipts for the expenses. As such, the Trustee was unable to determine the veracity of the Debtor's expenditures.

4. The Debtor's Finances

Prior to the Trial, the Trustee repeatedly requested the Debtor's bank statements and cancelled checks for the period of January 1, 2006 through December 31, 2007. The Trustee made his requests several times: once at the Debtor's 341 Meeting and twice by letter. The documents were produced months after they were first requested and only just prior to the commencement of the Trial.

The Debtor has been employed by United Rentals Inc. since late 2005, and according to his Schedule I "Current Income of Individual Debtor", he has a net monthly take home pay of $5,010.71, and a combined average monthly income with his wife of $7,376.71. (Trial Ex. C.13).

The Debtor's Statement of Financial Affairs "income from employment" states that in 2007 he earned $70,785. (Trial Ex. C.16). The Debtor's Statement of Financial Affairs states that the Debtor's income for 2006 was $69,489.

However, the Debtor's bank statements reveal that in both 2006 and in 2007 there were deposits made, exclusive of the Debtor and his spouse's salaries, in the total sum of $126,975.72 (for 2006), and $44,305.32 (for 2007). Neither of these figures were included on the Debtor's Statement of Financial Affairs. The reason for the discrepancies was because the Debtor was receiving funds from Tripodi and taking cash advances on his credit cards in order to pay for the mortgage on the Central Boulevard Property. Additionally, the Debtor testified that he liquidated certain pension accounts, including his Local 282 Teamsters Union Pension between 2006 and 2007. He testified at Trial that the different accounts were roughly valued at $9,000, $13,000, and $6,000. However none of these were listed on the Debtor's Statement of Financial Affairs as "Closed Financial Accounts."

The Court also notes that on December 23, 2008 the Court entered an Order and Judgment against the Debtor requiring the Debtor to turn over to the Trustee the non-exempt portion of the Debtor's 2007 federal and state income tax refund in the amount of $3,788.48. At Trial the Debtor admitted that he spent his entire refund and had not turned any funds over to the Trustee in spite of the Court's Order.

The Trustee argues that the failure of the Debtor to comply with the Trustee's request for documents, the Debtor's failure to amend his Petition and Schedules to correctly reflect his finances and expenses, and his false testimony at the 341 Meeting have prevented the Trustee from being able to properly investigate and administer the case. Thus, the Trustee requests that the Debtor's discharge be denied.

**DISCUSSION**

It is well settled law in the Second Circuit that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *See State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996); *Pergament v. Smorto* (*In re Smorto*), 2008 U.S. Dist. LEXIS 19235, *12 (E.D.N.Y. Mar. 12, 2008). However, a discharge under 11 U.S.C. § 727 is a privilege, not a right, and may only be granted to the honest debtor. *See In re Tabibian*, 289 F.2d 793, 794 (2d Cir. 1961); *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).

1. **11 USCS § 727(a)(4)(A)**

It is well established that under § 727(a)(4)(A), the party objecting to the Debtor's discharge must prove the following by a preponderance of the evidence: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *See Calucci & Legum v. Murray* (*In Re Murray*), 249 B.R. 223, 228 (E.D.N.Y. 2000).

The burden of showing actual fraudulent intent falls on the shoulders of the party objecting to the debtor's discharge. *See In re Smorto*, 2008 U.S. Dist. LEXIS 19235 at *20. A material omission from the debtor's Chapter 7 schedules or a false statement of financial affairs may constitute a false oath. *See United States v. Swenson* (*In re Swenson*), 381 B.R. 272, 293 (Bankr. E.D. Cal. 2008).

It is crucial for the successful administration of the estate for the debtor to have provided truthful information in his petition and schedules. *See Dubrowsky v. Estate of Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 572 (E.D.N.Y. 2000); *In re Braathen*, 364 B.R. 688, 698 (Bankr. N.D. 2006) ("A debtor's signatures on the petition, made under penalty of perjury, are

declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath.").

Fraudulent intent "may be inferred from a series of incorrect statements and omissions contained in the schedules." *In re Smorto*, 2008 U.S. Dist. LEXIS 19235 at *21; *see Adler v. Ng* (*In re Adler*), 395 B.R. 827, 843 (E.D.N.Y. 2008); *Sicherman v. Rivera* (*In re Rivera*), 2007 Bankr. LEXIS 26, *5 (B.A.P. 6th Cir. Jan. 11, 2007) ("… the Debtor's 'whole pattern of conduct' can support a finding of fraudulent intent."); *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1584 n.4 (2d Cir. 1983); *Calucci & Legum v. Murray* (*In Re Murray*), 249 B.R. 223, 229 (E.D.N.Y. 2000).

If the Debtor is found to have exhibited a "reckless indifference to the truth", then it may be appropriate to deny him a discharge. *In re Dubrowsky*, 244 B.R. 560, 571-72 (E.D.N.Y. 2000); *see Tese-Milner v. Moon* (*In re Moon*), 385 B.R. 541, 559 (Bankr. S.D.N.Y. 2008) ("In the absence of an express admission of fraudulent intent, a trustee can rely on references to circumstantial evidence, including the debtor's conduct and all of the facts and circumstances of the case, and a pattern of reckless indifference or disregard for the truth can support an inference of fraudulent intent."); *Sanderson v. Ptasinski* (*In re Ptasinski*), 290 B.R. 16, 22-23 (Bankr. W.D.N.Y. 2003). It is the view of this Circuit that "any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of § 727(a)(4)(A)." *New World Rest. Group, Inc. v. Abramov* (*In re Abramov*), 329 B.R. 125, 134 (Bankr. E.D.N.Y. 2005); *see In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974); *see also In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

The Trustee has proven that the Debtor delayed and dragged out the process of turning over his financial documentation until well after the instant adversary proceeding had been

8

commenced.[4] The failure of the Debtor to turn over any documentation to support his listing of $650 worth of expenses on his Schedule J is revealing. While the Court does not doubt that most people do not keep receipts for several expenditures, when a Debtor's bankruptcy petition is being completed it is crucial for the Debtor to be as accurate as possible in order to facilitate the administration of his estate by the Trustee, and to allow his creditors and the Court to have a perspective on said Debtor's financial situation. Here, the Debtor hampered such facilitation by the Trustee, and appears to be playing fast and loose with the bankruptcy process. In the absence of any evidence, it is unclear from the papers and the record how the Debtor arrived at all of the numbers that he put on his Schedules.

The Debtor's testimony that he believed that by turning over his bank statements it would provide the Trustee with "some knowledge" of where the Debtor's family was spending the money is not persuasive, and is a rather cavalier response in light of the state of affairs that the Debtor finds himself in. Instead of attempting to work with the Trustee to turn over the requested documents, the Debtor simply asserted that he did not have them and then dragged out the process of turning over what he did have, and then asserted that the Trustee should have been able to figure out his expenses based on what was turned over. This is unacceptable.

Furthermore, the Trustee requested documents indicating the rental value of the Residence, because he was told by the Debtor that the Debtor and his wife were renting the property. However, the Debtor could not provide any documentation regarding the rental value because he was not renting the Residence; it was owned by his wife and her father. The record is not clear as to when the Trustee learned of this, but it is apparent that the Debtor lied at his 341

---

[4] At Trial the Trustee stated the following: "… the bank statements, which are part of the trial exhibits, which were ultimately produced by the defendant were produced after I commenced the adversary proceeding. So yes, they are here, but they were not produced when requested, and it took me months to commence this adversary proceeding, and then ultimately the defendant decided to turn them over …." (1/26/09 Tr., p. 5).

9

Meeting. The testimony of the Debtor and his wife that they both referred to their payments as "rent" to the wife's father due to her father's $20,000 contribution towards the purchase of the premises is not credible in light of the other errors, omissions, and falsities on the Debtor's Petition and Schedules.

In addition, the Debtor's testimony reveals that he failed to schedule the claims of Tripodi and his father-in-law for the loans that he received; he failed to disclose the circumstances surrounding his acquisition of the Central Boulevard Property; and he failed to disclose the additional income that he received in 2006 and 2007 from his cash advances on his credit card, and the monies that he received from Mr. Tripodi for the Central Boulevard Property. The Debtor also failed to disclose his partnership with Tripodi and Maffettone, and omitted any discussion of it when questioned by the Trustee about the Central Boulevard Property at his 341 Meeting.

Based on weighing all of the relevant aforementioned facts, the Court finds that the Debtor's conduct could be construed as having been made with fraudulent intent at worse, or having been made with reckless indifference to the truth at best. These falsities, omissions, and untruths by the Debtor were material to the administration of his bankruptcy case, and substantially impaired the ability of the Trustee to facilitate his duties. Thus, the Court denies the Debtor a discharge under 11 U.S.C. § 727(a)(4)(A).

### 2. **11 USCS § 727(a)(4)(D)**

As it was recently stated by the Bankruptcy Court in *In re Gardner*, the party seeking denial of a debtor's discharge under § 727(a)(4)(D) must prove the following: "(i) the debtor knowingly and fraudulently (ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers

relating to the debtor's property or financial affairs (iii) in or in connection with the debtor's own case. *See Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008).

These standards have been noted to place an "affirmative duty" on the Debtor to cooperate with the Trustee and provide the requested documentation. *See In re Gardner*, 384 B.R. at 668; *In re Young,* 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006); *In re Erdheim,* 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996) (holding that where the trustee had to seek information from a third party due to debtor's failure to provide the requested documentation, the debtor failed to comply with his duty to cooperate).

As was discussed in *In re Young*, the showing of the requisite intent can be found if the debtor's conduct "was evasive or persistently uncooperative" or if the debtor claims that he turned over the documents with no evidence that he did so, or the debtor persistently failed to turn over the documents after repeated requests. *In re Young,* 346 B.R. 597, 615-16 (Bankr. E.D.N.Y. 2006); *see In re Gardner*, 384 B.R. at 668 (Bankr. S.D.N.Y. 2008).

As noted above, the facts of the instant case make it clear that the Debtor persistently failed to cooperate with the Trustee. There is no justification shown why the Debtor failed to turn over the requested documents to the Trustee when requested, and only prior to the trial of this adversary proceeding. While the record contains a letter from Debtor's counsel to the Trustee stating that the bank statements and checks were disclosed, it is clear from a review of the Trial transcript that this is not accurate. The Debtor testified that he sent the bank statements to his own counsel, but not to the Trustee. However, he failed to provide any evidence of doing so. Assuming this is true, it is inexplicable why the Debtor's counsel would fail to send bank statements received from the Debtor and requested by the Trustee.[5] As such, the Court finds the

---

[5] Upon a review of the Transcript, the Debtor's counsel questioned the Debtor's wife regarding the alleged difficulty to turn over the bank statements. He began this line of questioning on cross-examination, but since it was not the

Trustee has met his burden.  Thus, the Trustee's request to deny the Debtor a discharge under 11 U.S.C. § 727(a)(4)(D) is granted.

## **CONCLUSION**

While denying a debtor a discharge is an act that the Court is loathe to do, the totality of the facts and circumstances in the instant case compels the Court to reach such a determination. The record before the Court reveals the numerous inaccuracies, falsities, and omissions contained in the Debtor's Petition, Schedules, and Statement of Financial Affairs, and his lack of cooperation with the Trustee.  Participation as a debtor in a bankruptcy case is not to be taken lightly.  Cavalier responses to questions under oath are unacceptable.  A debtor must respond to questioning in a forthright manner as earnestly as possible.

Thus, in light of the aforementioned facts and relevant case law, the Debtor's discharge is hereby denied pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(4)(D).


Dated: Central Islip, New York
       March 26, 2009

                                             *s/ Dorothy Eisenberg*
                                             Dorothy Eisenberg
                                             United States Bankruptcy Judge

---

subject of the direct examination the Court sustained the Trustee's objections to the line of questioning.  The Debtor's counsel failed to readdress the issue when he could have called her as a witness for the Debtor.  Thus, there remains no ascertainable reason in the record as to why the Debtor failed to produce the bank statements and cancelled checks.